**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| CLAUDIA RIOS-QUIROZ, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 3:11-cv-1168 |
| | ) | Chief Judge Campbell |
| v. | ) | Magistrate Judge Griffin |
| | ) | |
| WILLIAMSON COUNTY, TENNESSEE, | ) | JURY DEMAND |
| | ) | |
| *Defendant.* | ) | |

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

---

Pursuant to Fed. R. Civ. P. 56 and M.D. Tenn. L.R. 56.01, Plaintiffs submit this Memorandum of Law in Support of their motion for Partial Summary Judgment. Defendant Williamson County, Tennessee ("Williamson County") has implemented a policy and practice that requires the Williamson County Sheriff's Office (WCSO) to engage in the warrantless arrest and investigatory detention of persons who are not otherwise under arrest, but who come to the Williamson County Jail for administrative purposes following misdemeanor citations. These persons are arrested and held when U.S. Immigration and Customs Enforcement ("ICE") has transmitted an immigration detainer request form stating ICE has initiated an investigation against those persons. Pursuant to this policy and practice, Williamson County detained Plaintiffs for between fifteen and seventy-three hours until an ICE officer came to the Williamson County Jail to assume custody. During Plaintiffs' investigatory detention, Williamson County issued no warrant against these persons, brought no independent state criminal charge, conducted no probable cause hearing, set no bail, and offered Plaintiffs no opportunity to challenge their detention.

1

The Supreme Court has long held that warrantless arrest and detention for investigatory purposes is "foreign to our system," *Papachristou v. City of Jacksonville*, 405 U.S. 156, 159 (1972). *See also Kaupp v. Texas*, 538 U.S. 626, 630 (2003); *Dunaway v. New York*, 442 U.S. 200, 212 (1979); *Brown v. Illinois*, 422 U.S. 590, 605 (1975). Tennessee courts similarly reject investigatory detentions unsupported by probable cause. *See, e.g., State v. Bishop*, W2010-01207-CCA-R3-CD, 2012 Tenn. Crim. App. Lexis 171 at 19-24 (Tenn. Crim. App. Mar. 14, 2012) (citing both federal and state authorities that have "excoriated . . . 'detentions for purposes of gathering additional evidence[.]'") (copy attached).

Williamson County's policy and practice requiring Plaintiffs' warrantless arrest and investigatory detention without probable cause violates the most basic requirements of the Fourth and Fourteenth Amendments and Tennessee law. Plaintiffs therefore move for partial summary judgment against Williamson County on Claims I (Fourth Amendment), II (Fourteenth Amendment), and V (False Imprisonment) of their First Amended Complaint. (DE 10 at 10-13.)

## LEGAL AND FACTUAL BACKGROUND[1]

### I.    LEGAL FRAMEWORK GOVERNING ICE DETAINER REQUESTS

An ICE "detainer" request is a notice that ICE issues to Federal, State, and local law enforcement agencies (LEAs) to inform the LEAs that ICE intends to assume custody of an individual who is presently in the LEA's custody. 8 C.F.R. § 287.7(a).[2] According to the

---

[1]    Pursuant to L.R. 56.01(b), the parties submit a Joint Statement of Undisputed Material Facts ("SUMF") in support of their respective motions.

[2]    The sole statutory basis explicitly authorizing ICE detainer requests expressly limits their use to cases of aliens arrested for controlled substances offenses. 8 U.S.C. § 1357(d). Whether ICE's current detainer request regulation is *ultra vires* of this statutory authorization is outside the scope of this case. *See generally* Christopher N. Lasch, *Immigration Law: Enforcing the Limits of the Executive Authority to Issue Immigration Detainers*, 35 WM. MITCHELL L. REV. 164 (2008).That question is, however, pending before district courts elsewhere. *See Brizuela v.*

2

regulatory language defining ICE detainers, detainers are "requests" – not "orders" or "commands." 8 C.F.R. § 287.7(a). An "ICE detainer is not a criminal warrant, but rather a voluntary request that the law enforcement agency 'advise [DHS], prior to release of the alien, in order for [DHS] to arrange to assume custody.'" *Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905, 911 (S.D. Ind. 2011). *See also Garcia-Echevarria v. United States*, 376 F.3d 507, 501-511 (6th Cir. 2004) (noting ICE detainer request standing alone is insufficient to create custody necessary for habeas jurisdiction); *United States v. Juvenile Female* 377 F.3d 27, 35 (1st Cir. 2004) ("[A]n INS detainer is not, standing alone, an order of custody. Rather, it serves as a request that another law enforcement agency notify the INS before releasing an alien from detention so that the INS may arrange to assume custody over the alien. 8 C.F.R. § 287.7(a).") (footnote omitted).

An ICE detainer request is not a civil immigration arrest warrant. *Cf.* 8 C.F.R. § 236.6(b) (describing Form I-200, Warrant of Arrest). Consequently, an ICE detainer request, standing alone, is not subject to and lacks procedural the protections embodied in the Interstate Agreement on Detainers Act, 18 U.S.C. App. §§ 1-8, Pub. L. 91-538, § 1, 84 Stat. 1397 (Dec. 9, 1970). *See Vargas v. Swan*, 854 F.2d 1028, 1031-32 n.2 (7th Cir. 1988) ("The Interstate Agreement on Detainers pertains to 'untried indictments, informations, or complaints' pending in United States courts. 18 U.S.C. App. § 2. Thus criminal actions are subject to the Agreement. The detainer here, which is for an action for exclusion or deportation, which is a civil matter and not before a court as required by the Agreement, is not within the reach of the Agreement.").

---

*Feliciano*, No. 3:12-cv-00226-JBA (D.Conn. filed Feb. 14, 2012); *Jimenez v. Napolitano*, No. 11-cv-5422 (N.D. Ill. filed Aug. 11, 2011).

3

Unlike warrants, indictments, informations, complaints, and other charging documents, ICE detainer requests require neither probable cause nor reasonable suspicion to issue. 8 C.F.R. § 287.7(a) ("Any authorized immigration officer *may at any time issue* a Form I–247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency.") (emphasis added). *Cf.* 8 U.S.C. § 1357(a)(2) (conferring the power to warrantless arrest persons if there is "reason to believe" the subject has violated immigration laws *and* the subject "is likely to escape before a warrant can be obtained for his arrest."). Rather, ICE predominantly issues detainer requests indicating only that an "investigation has been initiated" against the subject to determine his or her right to be and remain in the United States. The ICE detainer request form issued for every Plaintiff cites the initiation of an ICE investigation as the sole grounds for the detainer request. *See* Exhibit A to SUMF ("Investigation has been initiated to determine whether this person is subject to removal from the United States"); *see also* SUMF ¶ 21. None of the ICE detainer request forms issued for Plaintiffs in this case indicates that a Notice to Appear, Warrant of Arrest, prior deportation or removal order, or other grounds upon which any of the Plaintiffs might have been lawfully held in custody, existed. *Id.*

## II.    PLAINTIFFS' WARRANTLESS ARREST AND INVESTIGATORY DETENTION

All Plaintiffs voluntarily reported to the Williamson County Criminal Justice Center (CJC) for booking after they received a misdemeanor citation in lieu of custodial arrest. SUMF ¶¶ 1-2. *See* Tenn. Code Ann. § 40-7-118; *State v. Walker*, 12 S.W.3d 460, 464 (Tenn. 2000) (recognizing a presumptive statutory right to be cited in lieu of custodial arrest absent statutorily defined factors). When Plaintiffs arrived at the CJC, WCSO employees communicated with ICE about them. SUMF ¶ 3. In response to these inquiries, ICE transmitted to WCSO employees a civil immigration detainer request form for each Plaintiff. SUMF ¶ 5. The six named Plaintiffs

4

were not permitted to leave the CJC during the period beginning when ICE officials advised Williamson County personnel that they would issue a detainer request and ending when Williamson County personnel received the Form I-247 detainer from ICE. SUMF ¶ 4. Williamson County then held Plaintiffs in the CJC as inmates pursuant to ICE's determination to issue the detainer. SUMF ¶ 9. WCSO officials provided Plaintiffs no *Miranda* warnings, SUMF ¶ 6; conducted no probable cause hearing, SUMF ¶ 7; set no bail, SUMF ¶ 8, lodged no state criminal charge, SUMF ¶ 10; and offered no Plaintiff an opportunity to challenge his or her detention. SUMF ¶ 11. Plaintiffs' warrantless, investigatory detentions lasted from a minimum of fifteen hours (Plaintiff Alvarado-Dealmonte) to a maximum of seventy-three hours (Plaintiff Martinez-Lopez). SUMF ¶ 12. Between January 1, 2011, and December 12, 2011, Williamson County similarly detained no fewer than ten other individuals who appeared for booking on misdemeanor citations pursuant to determinations by ICE. SUMF ¶ 13. During all relevant times, Williamson County had no other agreement with ICE or state-law authorization to enforce completed civil violations of federal immigration law. SUMF ¶¶ 14-20. Yet, an investigation for suspected completed civil violations of federal immigration law formed the sole basis for Plaintiffs' arrest and detention by Williamson County. *See* Exhibit 1 to SUMF ("An investigation has been initiated . . . .").

## ARGUMENT

### I.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its

5

motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by demonstrating an absence of evidence to support the nonmoving party's case. *Id*. In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Pennington*, 553 F.3d at 450; *Van Gorder v. Grand Trunk Western Railroad, Inc*., 509 F.3d 265, 268 (6th Cir. 2007). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, (1986)).

Summary judgment is particularly appropriate where, as here, the parties have jointly stipulated to undisputed material facts and presented to the Court for summary disposition a threshold issue that is purely a question of law. *See, e.g., Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996) (qualified immunity); *Bowling Green & Warren County Airport Bd. v. Martin Land Dev. Co.*, 561 F.3d 556, 558 (6th Cir. 2009) (statutory construction).

## II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FOURTH AND FOURTEENTH AMENDMENT CLAIMS

Plaintiffs bring their Fourth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983. To prove their Section 1983 claims, Plaintiffs must establish that: (1) they were deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under color of state law. *Spurlock v. Whitley*, 971 F. Supp. 1166, 1175 (M.D. Tenn. 1997). For the reasons discussed in Section II.B.i., *infra*, Plaintiffs submit that there is no dispute in this case that Defendants were acting under color of state law.

6

Plaintiffs base their Section 1983 claims against Williamson County on the County's municipal liability under *Monell v. New York City Dep't of Soc. Servs*. 436 U.S. 658, 691 (1978). To establish municipal liability under Section 1983, a plaintiff must establish that the plaintiff's harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

### A. Plaintiffs' Warrantless Arrest and Investigatory Detention Violated Their Constitutional Rights.

Williamson County's arrest of Plaintiffs without a warrant or probable cause violated their Fourth Amendment right to be free from unreasonable seizure.[3] Similarly, Plaintiffs' prolonged detention without a probable cause hearing or other adequate legal justification violated Plaintiffs' Fourth Amendment rights under *Gerstein v. Pugh*, 420 U.S. 103, 105 (1975) and *County of Riverside v. McLaughlin*, 500 44, 56-57 (1991). Finally, because Williamson County detained Plaintiffs without notice and an opportunity to challenge their detentions, and without adequate legal justification, these investigatory detentions violated Plaintiffs' right to due process under the Fourteenth Amendment.

### i. Plaintiffs' Warrantless Arrests and Investigatory Detentions Violated the Fourth Amendment.

#### 1. *Williamson County Violated the Fourth Amendment By Arresting Each Plaintiff Without Probable Cause.*

---

[3] Although the federal government is not a party to this action, Plaintiffs refer to the "Fourth Amendment" for conceptual clarity, and assume without discussion the Fourth Amendment protections Plaintiffs claim have been incorporated against the states by the Fourteenth Amendment. *See, e.g., Wolf v. Colorado*, 338 U.S. 25 (1949); *Mapp v. Ohio*, 367 U.S. 643 (1961); *Aguilar v. Texas*, 378 U.S. 108 (1964); and *Ker v. California*, 374 U.S. 23 (1963).

To sustain a claim of unlawful seizure (or false arrest) under the Fourth Amendment, Plaintiffs must show that an arrest occurred and that there was no probable cause for that arrest. *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997). A consensual encounter becomes a seizure when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (internal quotation omitted). *See also Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). In a civil rights action, the existence of probable cause to arrest is a question of fact which is left for the jury *unless* there is only one reasonable determination possible. *Crockett v. Cumberland College,* 316 F.3d 571, 581 (6th Cir. 2003); *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). Summary judgment on probable cause is appropriate here because, in light of undisputed material facts, the only reasonable determination is that probable cause did not exist.

Although Plaintiffs voluntarily reported to the CJC for misdemeanor booking, Williamson County's actions constitute a seizure and arrest within the meaning of the Fourth Amendment. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Slusher v. Carson*, 520 F.3d 449 (6th Cir. 2008) (quoting *Graham,* 490 U.S. 386, 395 n.10 (1989) and *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). "[I]t is not a novel proposition that even an initially consensual encounter between police officers and an individual can ripen into a seizure for which probable cause must be shown." *Myers v. Potter*, 422 F.3d 347, 356 (6th Cir. 2005) (citing *INS v. Delgado*, 466 U.S. 210, 215 (1984)).

8

Williamson County seized each Plaintiff beginning when ICE informed WCSO deputies that the agency would transmit an immigration detainer. SUMF ¶ 4. Each Plaintiff spent the next the fifteen to seventy-three hours as an inmate in the Williamson County jail. SUMF ¶ 12. Like the Plaintiff's investigatory detention in *Myers*, under these circumstances, "it cannot seriously be suggested" that a reasonable person in Plaintiffs' situation would have thought they were being detained in the CJC as a matter of choice, "free to change his mind and go home to bed." *Id.* (quoting *Kaupp v. Texas,* 538 U.S. 626, 632, (2003)).

Williamson County arrested each Plaintiff without probable cause. Williamson County concedes that it did not arrest Plaintiffs based on probable cause that they had committed or were committing an offense. SUMF ¶ 9 ("All Plaintiffs were held . . . based upon . . . an immigration detainer."); SUMF ¶ 8 ("detention continued under the authority of an ICE determination pursuant to 8 C.F.R. § 287.7."); SUMF ¶ 10 ("Detention of Plaintiffs . . . was not pursuant to state criminal law."); SUMF ¶ 11 (no offer to challenge detention "since such was pursuant to an ICE detainer."). Williamson County further concedes that WCSO officers have no authority under federal or state law to arrest individuals for completed civil violations of federal immigration law. SUMF ¶¶ 14-19. *See also Urrieta v. United States*, 520 F.3d 569, 574 (6th Cir. 2008) (requiring an independent state criminal charge to for officers to detain a person suspected of immigration violations). The only justification Williamson County claims for its arrests of Plaintiffs is the perceived authority of ICE's immigration detainer requests. SUMF ¶ 9.

In the absence of probable cause, immigration detainer requests based solely on ICE's initiation of an investigation cannot provide adequate legal justification for Williamson County's

9

warrantless arrest and detention of Plaintiffs.[4] As discussed *supra*, ICE detainer requests standing alone are not custody orders. It is well-established that "[a]rresting a person on suspicion, *like arresting a person for investigation*, is foreign to our system, even when the arrest is for past criminality." *Papachristou v. City of Jacksonville*, 405 U.S. at 169 (emphasis added). For example, the plurality in *Florida v. Royer* stated that detentions may be "'investigative' yet violative of the Fourth Amendment absent probable cause." 460 U.S. 491, 499 (1983). As such, the police "may [not] seek to verify their suspicions by means that approach the conditions of arrest. *Dunaway v. New York* . . . made this clear." *Id.* More recently, the Court in *Kaupp* summarized these authorities and stated, "we have *never* 'sustained against a Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station *and his detention there for investigatory purposes* . . . absent probable cause or judicial authorization.'" 538 U.S. at 630 (quoting *Hayes v. Florida*, 470 U.S. 811, 815 (1985) (emphasis added)). As Justice Scalia noted in his dissent in *McLaughlin*, "[w]e have long held, of course, that delaying a probable-cause determination" while "awaiting completion of investigations and filing of investigation reports by various state and federal agencies" – "effecting what Judge Posner has aptly called 'imprisonment on suspicion, while the police look for evidence to confirm their suspicion,' *Llaguno v. Mingey*, 763 F.2d 1560, 1568 (7th Cir. 1985) – is improper. 500 U.S. at 68 n.3 (arguing against a hard-and-fast 48-hour rule and citing *Gerstein*, 420 U.S. at 120, n.21, *and Mallory v. United States*, 354 U.S. 449, 456 (1957)).

This unbroken, unequivocal line of cases holding that investigatory detentions without probable cause violate the Fourth Amendment controls Plaintiffs' Fourth Amendment false arrest

---

[4]     Because they were not previously arrested and in custody pursuant to any independent criminal state charge, Plaintiffs do not raise, and this Court need not decide, the question of whether a person already in state custody may be detained for an additional period pursuant to an ICE investigation only detainer request.

10

claims. Williamson County's policy of honoring the ICE detainer requests in this case violated the Fourth Amendment. The ICE detainer request forms ICE transmitted to Williamson County all list initiation of investigation as the sole reason underlying the detainer request. In the absence of probable cause, Williamson's County's only justification for Plaintiffs' arrest and detention as being for investigatory purposes does not pass constitutional muster. Finally, the fact that ICE issued warrants of arrest and initiated removal proceedings against Plaintiffs *after* their release from detention in the CJC cannot validate the prior arrest or serve as evidence that probable cause existed at the time Williamson County arrested Plaintiffs. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 (6th Cir. 2005).

> 2. *Williamson County Violated the Fourth Amendment By Detaining Each Plaintiff Without A Probable Cause Hearing Before A Neutral Magistrate.*

Williamson County further violated the Fourth Amendment by denying Plaintiffs *any* probable cause determination – much less the "prompt" determination before a neutral magistrate the Fourth Amendment requires. *See McLaughlin*, 500 U.S. at 53 ("[T]he Fourth Amendment requires every state to provide prompt determinations of probable cause."). It is well-settled that the Fourth Amendment requires a prompt probable cause hearing before a neutral magistrate within, at most, 48 hours of arrest. *Id.* at 56-57. These bright-line rules apply not only in the criminal context but also in the context of administrative detention of individuals for immigration purposes. *See United States v. Adekunle*, 2 F.3d 559, 562 (5th Cir. 1993) (48-hour rule applies to border patrol agents); *United States v. Contreras*, 197 F. Supp.2d 1173, 1173-76 (N.D. Iowa 2002) (detention beyond 48 hours on an immigration hold violated the Fourth Amendment). A Section 1983 action is a recognized and appropriate vehicle to remedy a violation of the *McLaughlin* rule. *See United States v. Fullerton*, 187 F.3d 587, (6th Cir. 1999)

11

(suggesting *Bivens* remedy was an appropriate means to remedy 48-hour rule violation), *accord Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) (reversing district court's grant of summary judgment for defendants on, *inter alia*, Plaintiff's Section 1983 Fourth Amendment claim for 48-hour rule violation).

Even within the presumptively reasonable 48-hour period, the Supreme Court has suggested detentions without probable cause may still violate the Fourth Amendment if the delay is for an unreasonable or constitutionally impermissible purpose. *McLaughlin*, 500 U.S. at 56-57. The *McLaughlin* Court used delays for investigatory detention as a specific example of an unreasonable or constitutionally impermissible purpose:

> "This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. **Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest**, a delay motivated by ill will against the arrested individual, or delay for delay's sake**.** In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility.

*Id.* at 56 (emphasis added).

Williamson County's actions run afoul of the Supreme Court's specific prohibition on delaying or denying a probable cause hearing for the purpose of gathering additional evidence to justify the arrest. It is undisputed that Williamson County did not afford any Plaintiff a probable cause hearing. SUMF ¶ 7. The sole purpose of Plaintiffs' detention was ICE's initiation of an investigation to determine whether they were subject to removal from the United States. Exhibit 1 to SUMF and SUMF ¶ 21. Given these undisputed facts, Plaintiffs have established as a matter of law that Williamson County violated their Fourth Amendment rights to a prompt judicial

12

probable cause determination before a neutral magistrate by detaining them for solely investigative purposes.

### ii. Each Plaintiff's Detention Violated the Due Process Clause of the Fourteenth Amendment.

Williamson County's policy and practice violated Plaintiffs' right to both procedural and substantive due process by requiring their detention without adequate legal justification, notice, and an opportunity to challenge their detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Deprivation of this basic liberty without any authorization in law undermines the most basic protection of the Due Process Clause. Where the state deprives an individual of his liberty, it must have "a constitutionally adequate purpose for the confinement." *Jones v. United States*, 463 U.S. 354, 361 (1983) (internal quotation marks omitted).

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). As the Court noted in *Zadvydas* – a case involving the detention of non-citizens for immigration purposes – civil detention is only permitted when "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690. Moreover, any detention must be supported by adequate legal justification in order to comport with the substantive requirements of the Due Process clause. *See Fouch v. Louisiana*, 504 U.S. 71, 81-82 (1992) (striking down statute that allowed for commitment of individual without requiring governmental proof or an adversarial hearing).

13

Williamson County violated the Plaintiffs' right to substantive due process because, as explained *supra*, it did not have a "constitutionally adequate purpose" to justify Plaintiffs' detention. *See, e.g., Benham v. Edwards*, 678 F.2d 511, 531 (5th Cir. 1982), *vacated on other grounds, Ledbetter v. Benham*, 463 U.S. 1222 (1983) ("The continued detention of such an acquittee, in the absence of statutory authorization for such restraint, would violate due process of law."). Moreover, because it is undisputed that Plaintiffs received *no* opportunity to challenge their detention whatsoever, Williamson County violated Plaintiffs' procedural due process rights to notice and an opportunity to challenge their detention. *Loudermill*, 470 U.S. at 542.

### B. Williamson County's Policy Was The Moving Force That Caused Deprivations of Plaintiffs' Fourth and Fourteenth Amendment Rights.

Williamson County's policy of honoring ICE detainer requests to detain individuals who reported to the CJC for booking after receiving misdemeanor citations in lieu of arrest is the moving force that caused the violation of Plaintiffs' constitutional rights. To prevail on their municipal liability claims, Plaintiffs must demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the "moving force" behind the violation. *Spears*, 589 F.3d at 256. *See also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. Plaintiffs can look to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Monell*, 436 U.S. at 694; *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

14

In this case, there is no dispute that Plaintiffs were detained pursuant to the official policy of the Williamson County Sheriff's Office requiring Defendants to honor all immigration detainer requests – including those based only on investigations initiated – for individuals who appeared for booking after receiving a citation in lieu of custodial arrest.[5] The remaining question in the *Monell* inquiry is therefore whether the violations of Plaintiffs' constitutional rights occurred as a result of the execution of Williamson County policy. They did. Any suggestion to the contrary – whether it be that Williamson County had no choice but to comply with ICE's detainers, or that Tennessee law or policy required Williamson County's actions – must fail under well-settled principles of statutory and regulatory construction, including the strong presumption of regulations' constitutionality and the doctrine of constitutional avoidance

      i. **Any Reading Of ICE's Detainer Regulation To Require Williamson County's Compliance Must Fail Because Such An Interpretation Would Violate the Tenth Amendment.**

Williamson County may claim that its policy and practice of honoring ICE detainer requests is not the moving force behind Plaintiffs' constitutional deprivations because ICE's detainer regulation and the detainer form itself purport to require investigatory detentions. That argument is foreclosed by the Tenth Amendment and the Supreme Court's anti-commandeering decisions in *New York v. United States*, 505 U.S. 144 (1992) and *Printz v. United States*, 521 U.S. 898 (1997). The relevant regulation – captioned "temporary detention at Department request" – states:

> Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency *shall maintain custody* of the alien *for a period not to exceed 48 hours, excluding Saturdays,*

---

[5]    Were such actions not the policy of Williamson County, the "threshold question" upon which the parties agreed in the Initial Case Management Order, (DE 16 at 4), would be of little value to the resolution of this case, and the present cross-motions for summary judgment would not be before this Court.

> *Sundays, and holidays* in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(d) (emphasis added).

Regulations, like statutes, must be read as a whole. *United Savings Ass'n v. Timbers of Inwood Assocs*, 484 U.S. 365, 371 (1988); *see also Williams v. Chu*, 641 F. Supp. 2d 31, 38 (D.D.C. 2009) (applying canons of statutory construction to regulations); *Scott v. City of New York*, 592 F. Supp. 2d 501, 506-07 (S.D.N.Y. 2008) (same) *Rucker v. Wabash R.R. Co.*, 418 F.2d 146, 149 (7th Cir. 1969) (same). Subsection (d) must therefore be read in conjunction with subsection (a) of 8 C.F.R. § 287.7, which provides:

> (a) Detainers in general. Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I–247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

These two subsections should be construed, to the extent possible, so as to be consistent with one another. When construing these two provisions, the Court must seek a reading that avoids calling into question 8 C.F.R. § 287.7's constitutionality. As the Supreme Court has stated:

> [W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress. . . . 'The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution.

*DeBartolo Corp. v. Florida Gulf Coast Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). *Accord FCC v. Fox TV Stations*, 556 U.S. 502,

526 n.3 (2009) (recognizing the applicability of the doctrine of constitutional avoidance to regulatory construction); *Davet v. City of Cleveland*, 456 F.3d 549 (6th Cir. 2003) (applying constitutional avoidance principles to state law).

There are at least two possible interpretations of 8 C.F.R. §§ 287.7(a) and (d). Williamson County's interpretation may be that "shall" requires detention itself, and consequently, Williamson County had no choice but to honor ICE's detainer request by detaining each Plaintiff. On the other hand, Plaintiffs contend that the "shall" language in subsection (d) imposes a mandate of a different sort. Namely, it mandates that a local law enforcement agency honoring an ICE detainer request not detain the subject any longer than the period set forth in the regulation. *See Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) (construing "shall" in light of the broader statutory context and concluding, "doubt . . . is dispelled when we pass from the words alone to a view of the [statute]'s ends and aims." *See also Gutierrez de Martinez v. Lamango*, 515 U.S. 417, 432 n.9 (1995) (analyzing "shall" in its textual context and concluding "shall" sometimes means "may").

Plaintiffs' interpretation must prevail because, if 8 C.F.R. § 287.7(d) is read to mandate local detentions at ICE's behest, the regulation itself would be subject to grave infirmity on Tenth Amendment grounds. Under *Printz v. United States*, "the Federal Government may not compel the States to implement, by legislation *or executive action*, federal regulatory programs." 521 U.S. 898, 925 (1997) (striking down a federal mandate for local law enforcement officers to conduct background checks) (emphasis added); *see also New York v. United States*, 505 U.S. 144 (1992). The anti-commandeering principle applies not only to states themselves but also to officers of the state. *See Printz*, 521 U.S. at 928 (rejecting the argument that the Tenth Amendment only prohibits commandeering of state legislatures, not state executive officials).

17

The Supreme Court has made it clear that the "consent" of state officials cannot cure constitutional infirmities created by unlawful commandeering. *New York*, 505 U.S. at 154 ("Where Congress exceeds its authority relative to the States, therefore, the departure from the constitutional plan cannot be ratified by the 'consent' of state officials.").

Thus, if 8 C.F.R. § 287.7(d) is construed as a mandate to Williamson County to detain subjects at ICE's behest – rather than as a temporal limitation on those detainers – the regulation would violate the Tenth Amendment. On the other hand, if Plaintiffs' construction is correct, it simply means that any lawful detention under the regulation may not exceed 48 hours. Plaintiffs' construction of the statute is the only reading that does not violate anti-commandeering principles and does not mandate unconstitutional arrests and detentions. Accordingly, it was Williamson County's policy in implementing ICE's investigation-only detainer requests for individuals who are not previously arrested that was the moving force behind Plaintiffs' constitutional injuries – not the ICE detainer regulations.

      **ii.  Any Reading of Tennessee State Law That Would Require Williamson County To Perform An Immigration Arrest And Investigatory Immigration Detention Must Fail.**

Finally, any reading of Tennessee state law or policy that would require Williamson County's to comply with ICE's detainer request by arresting and detaining for investigation the Plaintiffs would equally run afoul of the doctrine of constitutional avoidance as applied in Tennessee courts because such a reading would be preempted by federal immigration law. The parties agree that "[n]either state nor local law authorizes WCSO personnel to make an independent determination to arrest or detain an individual for completed civil violations of federal immigration law." SUMF ¶ 19. Thus, if Williamson County claims that Tennessee state law or policy required any action of WCSO with regard to Plaintiffs' detention, that claim must

18

fail.  By their terms, neither Tenn. Code Ann. § 40-7-123 nor the POST Commission 'policy' attached as Exhibit A to Plaintiffs' original Complaint purports to authorize federal immigration arrests. Nor could they. Local law enforcement officers cannot enforce violations of civil immigration law unless specifically authorized to do so by Secretary of Homeland Security under special circumstances that are not applicable in this case. *United States v. Urrieta*, 520 F.3d 569, 574 (6th Cir. 2008). Williamson County sought such specific authorization from the federal government and failed to obtain it. SUMF ¶¶ 15-17. Thus, in the absence of any indication that the Tennessee General Assembly or any regulatory body sought to empower local law enforcement agencies with these inherently federal powers, Williamson County's policy and practice is the exclusive moving force that caused Plaintiffs' violations.

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FALSE IMPRISONMENT CLAIMS

Plaintiffs are entitled to summary judgment on Count V because Williamson County's arrest and detention of Plaintiffs constitutes false imprisonment without a mittimus in violation of Tennessee law. Tennessee law defines false imprisonment as the intentional restraint or detention of another without just cause. *See, e.g., Newsom v. Thalhimer Bros., Inc.,* 901 S.W.2d 365, 367 (Tenn. Ct. App. 1995). To recover under a theory of false imprisonment, a plaintiff must demonstrate: 1) the restraint or detention of one against her will, and 2) the unlawfulness of such detention or restraint. *Id.* (citing *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990)). *See also Bryant-Bruce v. Vanderbilt Univ., Inc*., 974 F. Supp. 1127, 1145 (M.D. Tenn. 1997).

Though Plaintiffs have sued a county government, the Tennessee Government Tort Liability Act "does not apply because TGTLA does not waive a county's state law immunity for false imprisonment. Tenn. Code Ann. § 29-20-205(2)." *Ramos-Macario v. Jones*, 2011 U.S.

19

Dist. Lexis 21461 at 38 (M.D. Tenn. 2011) (Haynes, J.) (copy attached). More specifically, where Plaintiffs allege they were "detained as a result of an unlawful immigration detainer, not a mittimus[,]" Plaintiffs present a "viable state law claim in a federal forum [that] should therefore proceed before this Court under its supplement jurisdiction." *Id.*

As discussed *supra*, Williamson County imprisoned Plaintiffs against their in the Williamson County Jail jail for between fifteen hours and nearly four days. As demonstrated in section II.A, these detentions were unlawful. In addition to the federal authorities prohibiting warrantless arrest and investigatory detention, Tennessee law has long established that "48-hour holds" for investigative purposes that unsupported by probable cause violate the federal and state constitutional protections against unreasonable search and seizure. For example, in *State v. Bishop*, the Tennessee Court of Criminal Appeals found law enforcement officers' belief that a defendant could be placed on a 48-hour hold and detained without charge in the absence of probable cause "troubling given that this court has repeatedly noted the illegality of this procedure and warned the Memphis Police Department specifically against its use." 2012 Tenn. Crim. App. Lexis 171 at 19-24 (citing *State v. Rush*, No. W2005-02809-CCA-R3-CD, slip op. at 2 n.2 (Tenn. Crim. App. 2006) (copy attached); *State v. Ficklin*, No. W2000-01534-CCA-R3-CD (Tenn. Crim. App. 2001) (copy attached); *State v. Lawrence*, 154 S.W.3d 71 (Tenn. 2005) (finding no error in detention only because it was supported by probable cause); and *State v. Dean*, 76 S.W.3d 352, 362 (Tenn. Crim. App. 2011) (same)). The *Bishop* court continued:

> More troubling still is the fact that the procedure utilized in this case does not appear to be based solely upon the constitutional misunderstandings of the individual officers in this case but upon an approved departmental policy, as evidence by the fact that the department has created a form specifically for the '48-hour hold.'

*Id.* Indeed, when recently faced with a Section 1983 challenge to its jail's 48-hour hold policy, another Tennessee county sheriff's office simply capitulated and entered into an agreed injunction. *See Rhodes v. Lauderdale*, No. 2:10-cv-02068 (W.D. Tenn. filed 2010). Nothing in 8 C.F.R. § 287.7 or ICE's detainer request form alters the Fourth Amendment's requirement of probable cause of every law enforcement arrest or it prohibition on investigatory detentions.

Plaintiffs have thus demonstrated that they are entitled to summary judgment on their claim that they were falsely imprisoned without a mittimus.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court GRANT their Motion for Partial Summary Judgment as to Claims I, II, and V of their First Amended Complaint and set a trial date to determine the amount of damages.

Date:   May 14, 2012          Respectfully submitted,

                             /s Elliott Ozment
                             **Elliott Ozment (BPR # 4331)**
                             /s R. Andrew Free
                             **R. Andrew Free (BPR # 30513)**
                             LAW OFFICES OF ELLIOTT OZMENT
                             1214 Murfreesboro Pike
                             Nashville, TN 37217
                             Phone: (615) 321-8888
                             Fax: (615) 321-5230
                             Elliott@ozmentlaw.com
                             afree@ozmetlaw.com

                             *Counsel for all Plaintiffs*

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been electronically delivered via this Court's ECF/CM system on this date to the following recipients:

Lisa M. Carson
BUERGER, MOSELEY & CARSON, PLC
306 Public Square
Franklin, TN 37064
Telephone: (615) 794-8850
Facsimile: (615) 790-8861

Lee Ann Thompson
BUERGER, MOSELEY & CARSON, PLC
306 Public Square
Franklin, TN 37064
Telephone: (615) 794-8850
Facsimile: (615) 790-8861

<u>s/R. Andrew Free, BPRN 30513</u>